| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | |
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>                    Debtors. | NOT FOR PUBLICATION<br><br>Chapter 11<br><br>Case No. 12-12020 (MG) |
| RESCAP LIQUIDATING TRUST,<br><br>                    Plaintiff,<br><br>                  v.<br><br>LIEBERT CORPORATION, and EMERSON NETWORK POWER, LIEBERT SERVICES, INC.,<br><br>                  Defendants. | Adv. Proc. No. 14-01969 (MG) |
| LIEBERT CORPORATION, and EMERSON NETWORK POWER, LIEBERT SERVICES, INC.,<br><br>                  Third-Party Plaintiffs,<br><br>                  v.<br><br>ALLY FINANCIAL, INC.,<br><br>                  Third-Party Defendant. | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THIRD-PARTY DEFENDANT'S MOTION TO DISMISS**

*A P P E A R A N C E S:*

WEIL, GOTSHAL & MANGES LLP
*Attorneys for Third-Party Defendant*
767 Fifth Avenue
New York, New York 10153
By:    Ray C. Schrock, P.C.

KIRKLAND & ELLIS LLP
*Attorneys for Third-Party Defendant*
300 North LaSalle
Chicago, IL 60654
By:    Justin R. Bernbrock, Esq. (admitted *pro hac vice*)

HUSCH BLACKWELL LLP
*Attorneys for Third-Party Plaintiffs*
4801 Main Street, Suite 1000
Kansas City, Missouri 64112-2551
By:    Benjamin F. Mann, Esq. (admitted *pro hac vice*)

NORTON & ASSOCIATES, LLC
*Attorneys for Third-Party Plaintiffs*
8 West 40th Street, 12th Floor
New York, New York 10018
By:    Michael E. Norton, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

The ResCap Liquidating Trust (the "Trust"), as successor in interest to the debtors (the "Debtors") in the above-captioned chapter 11 bankruptcy proceedings, filed an adversary proceeding (the "Adversary Proceeding") against Liebert Corporation ("Liebert"), Emerson Network Power ("Emerson"), and Liebert Services, Inc. (together with Liebert and Emerson, the "Liebert Parties"), seeking to avoid and recover approximately $800,000 of allegedly preferential transfers under sections 547 and 550 of the Bankruptcy Code.  The Liebert Parties then filed a third-party action (the "Third-Party Action") against the Debtor's parent company, Ally Financial, Inc. ("AFI"), for breach of contract.  The Third-Party Action relies on certain contracts executed by AFI and Liebert pursuant to which the Liebert Parties rendered services for the Debtors and/or AFI.  According to the Liebert Parties, AFI is liable to the Liebert Parties to the extent the Trust successfully avoids any payments that were purportedly made by the Debtors for services the Liebert Parties rendered for the Debtors under the relevant contracts.

2

Before the Court is AFI's motion (the "Motion," ECF Doc. # 33)[1] to dismiss the third-party complaint (the "Third-Party Complaint," ECF Doc. # 3) filed by the Liebert Parties. The Motion relies on a third-party release provided to AFI in the Debtors' chapter 11 plan of liquidation (the "Plan," Case No. 12-12020, ECF Doc. # 6063); in exchange, AFI paid approximately $2.1 billion to the estate, enabling the Plan to be confirmed. According to AFI, the release should be broadly interpreted and bars the Third-Party Complaint from being asserted against AFI because it asserts claims relating to the Debtors. In their opposition (the "Opposition," ECF Doc. # 37),[2] the Liebert Parties assert that the Third-Party Complaint falls outside the reach of the release because to the extent the Liebert Parties could be considered holders of a claim under the Plan, their claim, which would arise under section 502(h) of the Code, has not yet accrued. Although the Plan's release is broad, the Liebert Parties contend that it is not so broad as to bar future claims; that is, claims that arise after the effective date of the Plan. But if the Liebert Parties obtain a claim under section 502(h), it is "as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(h).

As set forth below, the Motion to dismiss the Third-Party Complaint is **GRANTED IN PART** and **DENIED IN PART**. The Court concludes that the Third-Party Release bars the Liebert Parties' claim against AFI arising under section 502(h) to the extent the Liebert Parties performed services for the Debtors, and to that extent, the Motion is granted. The Third-Party Complaint also alleges, however, that with respect to one AFI facility, the Liebert Parties

---

[1]    Unless indicated otherwise, all references to "ECF Doc. # __" are to the Adversary Proceeding's docket.

[2]    AFI also filed a reply (the "Reply," ECF Doc. # 42) in support of its Motion.

3

performed services for AFI pursuant to the parties' contracts. The Third-Party Release does not apply to such services, and to that extent, the Motion is denied.[3]

## I. BACKGROUND

### A. The Debtors' Chapter 11 Plan

The Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code on May 14, 2012 (the "Petition Date"). On December 6, 2013, the Debtors filed their chapter 11 Plan, which this Court confirmed on December 11, 2013 (the "Effective Date") by entering an order (the "Confirmation Order," Case No. 12-12020, ECF Doc. # 6065). The Plan permanently released and enjoined certain "holders of Claims" from pursuing claims against AFI "arising from or related in any way to the Debtors" (the "Third-Party Release"). (Plan art. IX.D.) More specifically, the Third-Party Release reads as follows:

> On and as of the Effective Date of the Plan, the holders of Claims and Equity Interests, shall be deemed to provide a full and complete discharge and release to the Ally Released Parties and their respective property from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state security laws, veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to the Debtors, including those in any way related to RMBS issued and/or sold by the Debtors or their affiliates and/or the Chapter 11 Cases or the Plan, and any obligations under the DOJ/AG Settlement, the consent Order, and the Order of Assessment.

(*Id.*)[4]

---

[3]  After the hearing, AFI's counsel submitted a letter asserting that all services were performed on the Debtors' facilities, not AFI's facilities. (*See* ECF Doc. # 43.) The letter raises disputed issues of fact that cannot be resolved on a motion to dismiss.

[4]  AFI is one of the "Ally Released Parties." (*Id.* art. I.A ¶¶ 15, 21.)

4

The Third-Party Release also releases and discharges AFI from any claim or cause of action that the Trust may have been able to assert against AFI. The Plan states:

> Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval . . . [and] finding that this [Third-Party] Release is . . . a bar to the Debtors, the Liquidating Trust and any holder of a Claim or Equity Interest or other Entity who would have been legally entitled to assert such Claim or Cause of Action release pursuant to the [Third Party] Release.

(*Id.* art. IX.C.)

As consideration for the Third-Party Release, AFI contributed approximately $2.1 billion to the Debtors' bankruptcy estates. (*Id.* art. I.A.19.)

The Plan defines a "Claim" as "such term is defined in section 101(5) of the Bankruptcy Code" (*id.* art. I.A.53), which provides that a "claim" is any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," 11 U.S.C. § 101(5).

The Plan defines "Cause of Action" as:

> any and all Claims, actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including those of the Debtors, and/or the bankruptcy estate of any Debtor created pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases), including, without limitation, any claims, causes of action, objections, rights, remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, sections 502, 510, 542 through 545 and 547 through 553 or 558 thereof, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, whether held in a personal or representative capacity, that are or may be pending as of the date hereof or

5

>instituted hereafter against any entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date hereof.

(*Id.* art. I.A ¶ 50.)

### B.    The Adversary Proceeding and Third-Party Action

On May 12, 2014, the Trust filed the Adversary Proceeding complaint (the "AP Complaint," ECF Doc. # 1) against the Liebert Parties, seeking to recover transfers in the aggregate amount of $791,500.59 allegedly made by Debtor Residential Capital, LLC ("ResCap") and its affiliated Debtors to the Liebert Parties during the 90-day period prior to the Petition Date. (*See generally* AP Compl.)

On June 18, 2014, the Liebert Parties timely filed an answer to the AP Complaint, which included the Third-Party Complaint against AFI, seeking the recovery of any successfully avoided transfers challenged in the AP Complaint, together with attorneys' fees and costs. (*See generally* TP Compl.) The Third-Party Complaint is based on two contracts between the Liebert Parties and AFI: (1) the Master Services and Sales Agreement (the "MSSA," *id.* Ex. 1); and (2) the Statement of Work CW1962850 to the MSSA (the "SOW," *id.* Ex. 2, and together with the MSSA, the "Agreements"). According to the Third-Party Complaint, Liebert, on behalf of itself and Emerson, and AFI entered into the MSSA, through which the Liebert Parties agreed to supply certain goods and services to AFI and its affiliates and subsidiaries. (*Id.* ¶ 1.) Pursuant to the MSSA, particular projects performed under the MSSA were to be memorialized in a "statement of work." (*Id.* ¶ 2 (citing MSSA ¶ 1.25).) On December 23, 2011, Liebert and AFI entered into one such statement of work, the SOW, for the replacement of two industrial HVAC units and the addition of two of the same at a site in Lewisville, Texas (the "Lewisville Project"). (*Id.* ¶ 3.) The charges due and owing on the SOW for the equipment and installation thereof at

6

the Lewisville Project were $597,531.00 plus tax. (*Id.* ¶ 4 (citing SOW).) The Third-Party Complaint alleges that AFI is the party responsible for the payment of charges due for the Lewisville Project under the SOW and MSSA. (*Id.* ¶ 5.) The Third-Party Complaint further alleges that the Trust seeks to avoid certain transfers identified in Exhibit A to the AP Complaint, as preferential, but that the transfers identified as "2," "3," and "5" in Exhibit A were made on account of charges for the Lewisville Project under the SOW with the addition of tax, totaling $651,500.59. (*Id.* ¶¶ 6–7.) Similarly, the Liebert Parties allege that the transfer identified as "4" in the amount of $140,000 was made for services performed by Emerson under the MSSA for AFI's facility at 3451 Hammond Avenue, Waterloo, Iowa (the "Waterloo Project"). (*Id.* ¶ 8.) The Third-Party Complaint alleges that if identified transfers 2 through 5 are avoided by the Trust's AP Complaint, then the Liebert Parties will not have been paid as required by the MSSA and SOW. (*Id.* ¶¶ 9–10.) The Third-Party Complaint asserts a breach of contract claim against AFI, alleging that to the extent such transfers are avoided by the Trust, AFI, as the party responsible for performing under the MSSA and SOW, is liable for the amount of the avoided transfers, plus attorneys' fees and costs. (*Id.*)

On January 5, 2015, Liebert and Emerson filed a motion for default judgment against AFI. (*See* ECF Doc. # 24.) The Court denied the motion on February 11, 2015 because of ineffective service. (*See* ECF Doc. # 27.) The Liebert Parties thereafter properly served AFI (Motion ¶ 10) and AFI filed the instant Motion. The Court held a hearing (the "Hearing") on the Motion on May 15, 2015 and took the matter under submission.

At the Hearing on AFI's Motion to dismiss, the Court inquired whether the facilities the Liebert Parties worked on to complete the Lewisville and Waterloo Projects were Debtor facilities, Debtor and AFI facilities, or strictly AFI facilities. The parties agreed that the facilities

7

subject to the Lewisville Project were Debtor facilities; AFI's counsel could not speak to whether the facility subject to the Waterloo Project was a Debtor or AFI facility, but represented that they believed that the facility was owned and/or used by the Debtors. After the Hearing, AFI's counsel submitted a letter stating that the Waterloo Project facility was in fact a Debtor facility, owned and used by Debtor GMAC Mortgage, LLC ("GMACM"). (*See* ECF Doc. # 43 (citing Case No. 12-12020, ECF Doc. # 550, Schedules of Assets and Liabilities for GMACM at 19).)

### C. The Motion

AFI premises its Motion to dismiss the Third-Party Complaint on the existence and effect of the Third-Party Release of the Plan. AFI argues that the Motion is brought properly pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 41, as the Court is permitted to take judicial notice of the orders, pleadings, and other documents filed on the docket of the Debtors' bankruptcy cases before this Court and maintained by the Clerk of this Court. (*Id.* ¶ 19.) According to AFI, the Third-Party Complaint should be dismissed under FRCP 41 because it violates this Court's Confirmation Order for two reasons. (*Id.* ¶¶ 20–27.) First, AFI argues that the Liebert Parties together are "holders of [a] Claim[]" under the Plan because the Liebert Parties' breach of contract claim asserted in the Third-Party Complaint "aris[es] from [and is] related . . . to the Debtors," as it arises by virtue of the Liebert Parties' business relationship with the Debtors, and the Plan contemplates "holders of Claims" to include parties that receive a claim through section 502(h) (i.e. on account of having property avoided and recovered under sections 547(b) and 550 of the Code). (*Id.* ¶ 24.) AFI argues that because the Liebert Parties are the "holders of [a] Claim[]," the express terms of the Third-Party Release "permanently enjoin and preclude" the Liebert Parties from bringing or prosecuting the Third-Party Complaint against AFI. (*Id.* ¶ 25.) Second, AFI asserts that in practice, the Third-Party Complaint seeks to replace

8

the Liebert Parties with AFI in the Adversary Proceeding through the breach of contract claim; in other words, the Third-Party Complaint would ultimately render the dispute between AFI and the Trust. (*Id.* ¶ 26.) According to AFI, such a result is expressly prohibited by the Plan; the Trust cannot pursue claims against AFI. (*Id.*) AFI therefore argues that the Third-Party Complaint seeks to improperly circumvent the Third-Party Release and should be dismissed. (*Id.* ¶ 27.)

### D.    The Opposition

The Liebert Parties do not dispute that AFI is entitled, generally, to the benefit of the Third-Party Release, negotiated by the Debtors, AFI, and other Plan constituents and approved by this Court. (Opp. at 2.) The Liebert Parties do dispute, however, AFI's assertion that the Third-Party Release applies to bar the Third-Party Complaint because (1) the Third-Party Release only releases claims against AFI that are held by "holders of Claims and Equity Interests" as of the Effective Date of the Plan and the Liebert Parties were not creditors or equity holders of the Debtors at that time, and (2) the Third-Party Release is a discharge of claims that creditors had against AFI that existed at the time of confirmation, but cannot apply to claims, such as the alleged future section 502(h) claim of the Liebert Parties, that did not exist at that time. (*Id.*)

As to the Liebert Parties' first argument, the Liebert Parties assert that they cannot be construed as "holders of [a] Claim[]" because the Debtors never sent the Plaintiffs the Plan, disclosure statement, ballot, or any other Plan solicitation materials as they did to all "holders of Claims" that existed as of the Effective Date. (*Id.* at 3.) The Liebert Parties also assert that while AFI is correct that the Liebert Parties may become "holders of [a] Claim[]" by virtue of their rights under section 502(h) of the Code, such claim will not arise unless and until the Trust obtains a judgment against the Liebert Parties in the Adversary Proceeding. (*Id.* at 4.) The

9

Liebert Parties further argue that to the extent the Liebert Parties could be considered holders of a contingent claim, their contingent claim could not have arisen until the date upon which the AP Complaint was filed—a date after the Effective Date of the Plan. (*Id.* ¶ 4–5.)

As to the Liebert Parties' second argument, the Liebert Parties assert that the definition of "claim" under the Code and the Plan is not without limits: a claim is limited to claims which arise or come into existence as of a particular operative date. (*Id.* at 5.) As such, the Liebert Parties argue that the relevant operative date for the Third-Party Release is the Effective Date and any claims that did not exist as of that date cannot be barred. (*Id.*) The Liebert Parties also argue that the Third-Party Release should not be read to bar future claims because the Plan does not clearly and unambiguously provide for that, nor should it be read to bar claims like that of the Liebert Parties because the Liebert Parties and other similarly situated parties were not involved in negotiating the terms of the Third-Party Release. (*Id.* at 5–6.) Instead, the Liebert Parties submit that the Third-Party Release should be thought of as more of a debtor's discharge, citing to *In re Texaco Inc.* in which the court was presented with the question whether a breach of contract claim for a breach that had not yet occurred at the time of confirmation of a chapter 11 plan is a "claim" within the meaning of the Code such that it was discharged under the debtor's plan. (*Id.* at 7 (citing 254 B.R. 536 (Bankr. S.D.N.Y. 2000)).) According to the Liebert Parties, the *Texaco* court held that breach of contract claims in which the breach occurred before confirmation are "claims" that must be filed in the bankruptcy, but breach of contract claims based on breaches that occurred after confirmation are not. (*Id.* at 8.) The Liebert Parties argue that their Third-Party Complaint is based on a breach of contract claim in which the alleged breach has not yet occurred and can only be considered to have occurred upon the successful avoidance of transfers via the AP Complaint—a date after confirmation of the Plan. (*Id.* at 8–9.)

10

The non-existence of the Liebert Parties' breach of contract claim as of the Effective Date preludes the discharge of such claim by way of the Plan and its Third-Party Release. (*Id.* (citing *Holmes v. Air Line Pilots Ass'n Int'l*, 745 F. Supp. 176, 196 (E.D.N.Y. 2010); *In re Superior Air Parts, Inc.*, 486 B.R. 728, 738 (Bankr. N. D. Tex. 2012)).)

The Liebert Parties further argue that the Plan's release of claims by the Debtors and Trust against AFI does not bar the Third-Party Complaint. (*Id.* at 10.) The Liebert Parties assert that AFI provides no authority in support of its argument and makes an illogical leap to the assertion that the violation of this release should be remedied by barring the Third-Party Complaint, rather than by barring the action of the Trust, the party who provided the release. (*Id.*)

## II.    DISCUSSION

### A.    Motion Standards

AFI moves to dismiss the Third-Party Complaint under FRCP 12(b), made applicable here under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012, and FRCP 41, made applicable here under Bankruptcy Rule 7041.[5] To survive a motion to dismiss under FRCP 12(b)(6), a complaint need only allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more

---

[5] AFI notes that the Court may wish to treat the Motion as one for summary judgment pursuant to the Court's authorization under FRCP 12(c), in light of the required consideration of the Plan and Confirmation Order. The Liebert Parties did not address this notion in the Opposition. The Court does not convert the Motion to one for summary judgment, due to the Court's ability to take judicial notice of the prior court orders. *See* FED. R. CIV. P. 201.

11

than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). Additionally, a dismissal of a complaint pursuant to FRCP 41 may be granted upon the motion of a defendant "[i]f the plaintiff fails to prosecute or to comply with [the FRCP] or a court order." FED. R. CIV. P. 41.

On a motion to dismiss, in addition to the complaint, a court may consider written instruments, such as a contract, that is either attached to the complaint or incorporated by reference. *See, e.g.*, FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *In re Lois/USA, Inc.*, 264 B.R. 69, 89 (Bankr. S.D.N.Y. 2001) ("In addition to the complaint itself, a court may consider, on a motion to dismiss, the contents of any documents attached to the complaint or incorporated by reference . . . ."). Courts may also take judicial notice of a prior court order, to the extent it "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* FED. R. CIV. P. 201; *see also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). As such, the Court shall consider the relevant contracts (i.e. the MSSA and SOW) as well as this Court's Confirmation Order, which includes the express terms of the Plan.

This is not the first matter to arise in connection with the ResCap bankruptcy proceedings concerning the interpretation and application of the Third-Party Release granted to AFI. *See, e.g.*, *In re Residential Capital, LLC*, 508 B.R. 838 (Bankr. S.D.N.Y. 2014). "All courts retain jurisdiction to interpret and enforce their own orders." *Id.* at 849 (quoting *In re Charter Commc'ns*, No. 09-11435, 2010 WL 502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010)). The Motion requires the Court to interpret and apply the Plan and its own order confirming the Plan.

B.  **The Third-Party Release Bars the Third-Party Complaint to the Extent Any Avoidance Judgment Is Entered Against Liebert for Work Performed for Any of the Debtors**

The crux of the Motion is whether the Liebert Parties are "holders of Claims" such that the Third-Party Release in the Debtors' Plan necessarily bars the Third-Party Complaint filed against AFI. The parties dispute both the temporal and substantive scope of the Third-Party Release, focusing primarily on the definition of "claim" under the Plan and the Bankruptcy Code.

Section 101(5) of the Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). The Plan incorporates this definition. (Plan art. I.A.53.) "Congress unquestionably expected this definition to have wide scope"; indeed, the United States Supreme Court has "noted Congress' intent to invest the term 'claim' with the 'broadest possible' scope so that 'all legal obligations of the debtor . . . will be able to be dealt with in a bankruptcy case." *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 496–97 (2d Cir. 1995) (citing *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558 (1990); H.R. REP. NO. 95-595, at 310 (1977), U.S. CODE CONG. & ADMIN. NEWS 1978, at 5787, 6267). The Second Circuit has made clear that "the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment, and (2) whether that right arose before the filing of the petition." *Id.* "Whether a claim exists is determined by bankruptcy law, while the time a claim arises is determined under relevant non-bankruptcy law." *Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125 (2d Cir. 2000) (citing *In re Chateaugay*, 53 F.3d at 497) (holding that contractual indemnification claim arising out of an indemnification agreement executed pre-petition, constituted a pre-petition claim and was discharged under the debtor's chapter 11 plan). "A

13

claim will be deemed pre-petition when it arises out of a relationship recognized in, for example, the law of contracts or torts," *In re Chateaugay Corp.*, 53 F.3d at 497, and such relationship "contained all of the elements necessary to give rise to a legal obligation—a right to payment . . . ." *In re Manville Forest Prods. Corp.*, 209 F.3d at 129 (quoting *In re Chateaugay*, 53 F.3d at 497 (citation and internal quotation marks omitted)).

The parties agree that should the Liebert Parties be deemed "holders of [a] Claim[]," such "Claim" would be held pursuant to section 502(h) of the Code,[6] which states:

> A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(h). The parties disagree, however, whether such claim should be deemed to have arisen pre- or post-petition and further, pre- or post-confirmation of the Plan: the Liebert Parties assert that their section 502(h) claim does not and will not exist unless and until a judgment is entered against them in the Adversary Proceeding avoiding the transfers as preferential, whereas AFI argues that section 502(h) claims should be treated as if they arose pre-petition pursuant to the language of the statute. The parties also disagree whether such temporal arguments are relevant to the effectiveness of the Third-Party Release—AFI asserts that the timing of the claim does not matter for purposes of the effectiveness of the Third-Party Release because the release was intended to apply to all claims whether past, present, or future, whereas

---

[6] Although the parties agree that the Liebert Parties' "claim" would be brought pursuant to section 502(h) of the Code, the Court does not, for purposes of this Motion, decide whether the Liebert Parties' section 502(h) claim would be allowed or successful against the Debtors' estates should the Liebert Parties attempt to file such claim upon a judgment against them in the Adversary Proceeding. *See In re Gurley*, 311 B.R. 910, 918–19 (Bankr. M.D. Fla. 2001) ("To pursue [a section 502(h)] claim against the debtor, however, the [party from whom recovery is made] must be a creditor of the debtor or be able to assert a claim against the debtor under principles of common law.") (citing *Southmark Corp. v. Schulte, Roth & Zabel, L.L.P.*, 242 B.R. 330, 341 (N.D. Tex. 1999); *Official Comm. of Unsecured Creditors of Toy King Distribs., Inc. v. Liberty Savs. Bank, FSB (In re Toy King Distribs., Inc.)*, 256 B.R. 1, 204 (Bankr. M.D. Fla. 2000)).

14

the Liebert Parties argue that the claim must have been in existence on or as of the Effective Date of the Plan, as prescribed by the plain language of the Third-Party Release.

To determine whether the Liebert Parties' section 502(h) claim is subject to the Third-Party Release, the Court must analyze the language of both section 502(h) and the Third-Party Release. Beginning with section 502(h), "[w]hen a preferential payment is avoided, '[t]he obligation for which the payment was made is revived and may be asserted against the debtor's estate because the creditor has lost the value of the payment received.'" *Official Comm. of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 465 (Bankr. S.D.N.Y.2007) (quoting *In re Gurley*, 311 B.R. at 918). "[A]lthough a creditor did not have a claim at the time of bankruptcy because its claim had been satisfied by a preferential payment, subsequent avoidance of the payment relates back to the time before bankruptcy, so the claim is deemed to have been unpaid at the time the petition was filed." *Allied Cos. v. Broughton Foods Co. (In re Allied Cos.)*, 155 B.R. 739, 744 (Bankr. S.D. Ind. 1992). If the avoided transfer were made pursuant to a contract, despite the revival of the payment obligation, "the underlying contract is not rescinded as evidenced by the fact that, pursuant to section 502(h) of the Bankruptcy Code, the claimant is allowed a pre-petition claim against the bankruptcy estate for the obligation under the contract." *In re Enron Creditors Recovery Corp.*, 376 B.R. at 465.

While proofs of claims generally must be filed before the established and relevant bar date, the holder of a section 502(h) claim obtains an exception to this rule. *See* FED. R. BANKR. P. 3002(c)(3), 3003. Whether allowable or not, a section 502(h) proof of claim must be filed "within 30 days after the judgment [against the defendant(s) in the preference action] becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids

15

the entity's interest in property." *Id.* 3002(c)(3); *see also id.* 3003(c)(3) (applying Bankruptcy Rule 3002(c)(3)'s time limits to chapter 11 cases). This exception, however, does not necessarily preclude the holder of the section 502(h) claim from filing the claim prior to the entry of the judgment; it merely provides that the timeliness of a section 502(h) claim is governed by the date upon which a judgment is entered in the preference action. Although the operative date under this Bankruptcy Rule is a date different from that which generally applies to claims that arose pre-petition without the operation of a statute, the Bankruptcy Rule does not change the effect of section 502(h) in its pre-petition treatment of section 502(h) claims.[7]

Turning to the Third-Party Release, its terms must be examined using "principles of contract interpretation." *Shugrue v. Pension Benefit Guar. Corp. (In re Ionosphere Clubs, Inc.)*, 147 B.R. 855, 862 (Bankr. S.D.N.Y. 1992) (citing *Bartel Dental Books Co. v. Schulz*, 786 F.2d 486, 488 (2d Cir. 1986), *cert. denied*, 478 U.S. 1006 (1986)). "[I]f the language of the release is clear, . . . the intent of the parties [is] indicated by the language employed. Only where the language of the contract is ambiguous, i.e., where it is susceptible to more than one reasonable interpretation, and where there is relevant extrinsic evidence of the parties' actual intent, [does] the meaning of the words become an issue of fact . . . ." *Id.* (quoting *Locafrance U.S. Corp. v.*

---

[7] Similarly focused on the date of the avoidance judgment, the Liebert Parties point to a prior opinion of the Tenth Circuit. *See Langenkamp v. Hackler (In re Republic Trust & Savings, Co.)*, 897 F.2d 1041, 1045–46 (10th Cir. 1990). Specifically, the Tenth Circuit examined whether appellant entities, which were defendants in pending preference avoidance adversary proceedings, were "creditors" such that they were deprived of their Fifth Amendment due process rights in not receiving notice of the debtor's chapter 11 plan of reorganization and confirmation hearing. *Id.* at 1045. The Tenth Circuit held that the entities were not "creditors" and therefore were not deprived of their Fifth Amendment rights because they did not have a "claim," a "right to payment," or even a "contingent claim" while the adversary proceedings seeking to avoid alleged preferential transfers were pending. *Id.* at 1045–46. Rather, the Tenth Circuit held that the entities would not constitute "creditors" entitled to due process "[u]ntil the adversary proceedings are finally adjudicated . . . ." *Id.*; *see also id.* at 1046 n.5. This Tenth Circuit case however, is, inapposite. First, the Motion does not present the same narrow issue whether the Liebert Parties constitute "creditors" entitled to due process in the form of notice of the Debtors' Plan—an issue laced with constitutional implications. Second, the Liebert Parties have admitted that they did indeed receive notice of the Debtors' Plan and the date of the Plan's confirmation hearing; a fact that cuts against their assertions.

16

*Intermodal Sys., Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977) (citation and internal quotation marks omitted)). The Third-Party Release at issue states:

> On and as of the Effective Date of the Plan, the holders of Claims and Equity Interests, shall be deemed to provide a full and complete discharge and release to the Ally Released Parties and their respective property from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter, in law, equity, or otherwise, whether for tort, fraud, contract violations of federal or state security laws, veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to the Debtors, including those in any way related to RMBS issued and/or sold by the Debtors or their affiliates and/or the Chapter 11 Cases or the Plan, and any obligations under the DOJ/AG Settlement, the consent Order, and the Order of Assessment.

(Plan art. IX.D.)

The Court concludes that the language of the Third-Party Release is clear and unambiguous such that AFI received a release of all "Claims" arising from or related in any way to the Debtors, including "any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, *existing or hereinafter . . . .*" *Id.* (emphasis added). The Liebert Parties' claim, if any, arises under section 502(h), "as if such claim had arisen before the date of the filing of the petition." *See* 11 U.S.C. § 502(h). The fact that the Liebert Parties' "Cause[] of Action" against the Debtors under section 502(h) does not arise unless and until an avoidance judgment is entered against the Liebert Parties is irrelevant; the release, by its terms, covers "Causes of Action" "existing or hereinafter." (*See* Plan art. IX.D.) For a "Claim" to exist under the Plan and the Bankruptcy Code, the right to payment must arise pre-petition; section 502(h) makes clear that the Liebert Parties' claim, if any, is deemed to have arisen pre-petition. *See* 11 U.S.C. § 502(h). Any other result would make the clear purpose and intent of the AFI release illusory—releasing claims against AFI based on an

17

avoidance judgment entered before the Effective Date of the Plan, but not releasing claims against AFI based on an avoidance judgment based on exactly the same facts and circumstances but not entered until after the Effective Date of the Plan. AFI's Motion to dismiss the Complaint is therefore **GRANTED** in part.[8]

The Motion is denied in part due to a remaining disputed issue of fact that cannot be resolved on a motion to dismiss. At the Hearing, the Court asked about the extent the transfers at issue in the Adversary Proceeding and Third-Party Action relate to services the Liebert Parties rendered for AFI rather than for the Debtors. AFI's counsel agreed that to the extent the Third-Party Complaint is based on transfers made to the Liebert Parties for services the Liebert Parties rendered for AFI rather than the Debtors, the Third-Party Release would not bar the Third-Party Complaint. AFI's counsel represented on the record that to their knowledge all of the services performed were on Debtor facilities, not AFI-exclusive facilities, whereas the Liebert Parties' counsel pointed to the allegations in the Third-Party Complaint, stating that one of the four disputed transfers was made in connection with services rendered for the Waterloo Project on an AFI (not a Debtor) facility. (TP Compl. ¶ 8.) After the Hearing, AFI's counsel submitted a letter

---

[8] AFI's Reply brief reiterates and expands on many of the arguments AFI raised in its opening brief in support of the Motion. The Reply, however, also asserts novel arguments, including, for example, a challenge to this Court's subject matter jurisdiction over the Third Party Action and Adversary Proceeding, that were not raised in AFI's opening brief. The Court will not address AFI's arguments that were raised for the first time in the Reply. *See Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) ("When parties engage in motion practice, reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party. However, [a]rguments may not be made for the first time in a reply brief. (citations and internal quotation marks omitted)); *RMS Int'l Shipping GmbH v. Stemcor USA, Inc.*, No. 90 Civ. 4918 (LMM), 1991 WL 136035, at *4 n.7 (S.D.N.Y. July 18, 1991) ("This novel approach to motion practice suggest that an especially crafty movant might save all of its substantive arguments for its reply brief, thereby denying its opponent any opportunity at all to respond. The Court declines to adopt such a pernicious procedure. Defendants' request for sanctions is denied."); *Ceglia v. Zuckerberg*, 287 F.R.D. 152, 162–63 (W.D.N.Y. 2012) ("Second, Plaintiff raises this argument for the first time in his reply in further support of Plaintiff's motion. It is settled, however, that arguments raised for the first time in replying in further support of a motion are generally deemed waived." (citing *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010); *Ruiz v. Comm'r of Dep't of Transp. of City of N.Y.*, 858 F.2d 898, 902 (2d Cir. 1988) (holding that district court was within its discretion to reject argument first raised in reply to opposition to motion where such argument was "so belatedly advanced and so vaguely supported"))). In any event, the Court need not reach these issues because of the disposition of the Motion on the grounds explained above.

providing purported evidence that the Waterloo facility was a Debtor facility. (*See* ECF Doc. # 43.)

The Court must accept the well-pleaded allegations of the Complaint as true in considering whether the Third-Party Complaint sufficiently alleges that services were rendered by the Liebert Parties on behalf of AFI and/or the Debtors. The Court concludes that the Complaint sufficiently alleges that the Liebert parties performed services on an AFI facility. AFI's assertion after the hearing that all services performed by Liebert were on Debtors' facilities creates a disputed issue of fact that cannot be resolved by this Motion; to this extent, the Motion is **DENIED**.

### III.    CONCLUSION

For the foregoing reasons, the Motion to dismiss the Third-Party Complaint is **GRANTED in part and DENIED in part**. The Motion is granted to the extent it seeks to dismiss the Liebert Parties' Third-Party Complaint arising from any section 502(h) claim that the Liebert Parties may assert in the event an avoidance judgment is entered against the Liebert Parties based on work performed for any of the Debtors. The Motion is denied to the extent that an avoidance judgment is entered against the Liebert Parties for work they performed on any AFI facility for which payment was made to the Liebert Parties by any of the Debtors.

**IT IS SO ORDERED.**

Dated:  June 2, 2015
         New York, New York

                                                    *Martin Glenn*
                                              MARTIN GLENN
                                         United States Bankruptcy Judge

19